541 So.2d 160 (1989)
ALLSTATE INSURANCE COMPANY, Appellant,
v.
Jean Yvonne GRAHAM, Appellee.
No. 88-01719.
District Court of Appeal of Florida, Second District.
April 7, 1989.
*161 Bruce A. Walkley, Stephen K. Stuart and Steven A. Strickland of Walkley, Stuart, Macy & Strickland, P.A., Tampa, for appellant.
Michael L. Kinney, Tampa, for appellee.
PARKER, Judge.
Allstate Insurance Company (Allstate) appeals a final summary judgment entered in favor of Jean Graham. We reverse.
Graham sued Allstate for breach of contract alleging Allstate failed to pay her benefits under an automobile policy which provided personal injury protection (PIP) coverage to Graham. Allstate raised as an affirmative defense the failure of Graham to attend two scheduled medical evaluations.
Graham's PIP claim resulted from an automobile accident. An Allstate adjuster scheduled an independent medical examination (IME) with Dr. Young, a Tampa orthopedic surgeon. Graham acknowledged receipt of the letter dated August 4, 1983, scheduling the medical evaluation by returning the letter with the notation that Graham would attend the appointment.
On August 22, 1983, Graham's attorney, Frederick Garcia, wrote Allstate. The gist of the letter was an objection to Dr. Young as an evaluating physician on the ground that the applicable statute required an "independent" examining physician. The letter further suggested that Allstate choose one of six orthopedic surgeons that Garcia listed.
Eighteen days later Garcia wrote Allstate demanding the lost wages resulting from the automobile accident be paid to his client. Allstate scheduled another medical evaluation with Dr. Miller, also a Tampa orthopedic surgeon. Dr. Miller was not one of the doctors listed in Garcia's letter. On that same date, Allstate wrote Graham reserving the right to deny coverage under the PIP policy reciting the language in the Allstate policy that essentially follows the relevant portion of section 627.736(7)(b), Florida Statutes (1985).
Garcia responded by letter, objecting to Dr. Miller as not being independent. The letter further stated that Graham would attend the medical examination with Dr. Miller if Allstate paid all her lost wages and medical bills through the date of the evaluation and forwarded a copy of Graham's automobile insurance policy.
Several letters ensued between the Allstate adjuster and Garcia, in which Allstate asserted that it had no medical documentation to support the lost wage claim or payment of medical bills. Garcia, on the other hand, maintained that until Allstate paid all lost wages and provided a copy of the insurance policy, the company was in breach of the contract, and Graham would not submit to a medical examination. Garcia thereafter acknowledged receipt of a copy of the insurance policy. Eight months after the initial request for an IME, Allstate terminated further benefits under the PIP coverage for failure by Graham to submit to a medical examination as mandated under the applicable terms of the policy and the statute. It is undisputed that Allstate eventually paid all medical bills and lost wages incurred prior to the date of termination. Nor is it contested that Graham failed to attend either scheduled IME.
Allstate twice moved for summary judgment on the ground that under the undisputed facts in the record, Graham's failure *162 to attend two appropriately scheduled medical evaluations justified Allstate's termination of her PIP benefits. The trial court denied Allstate's motion for summary judgment on both occasions. Graham also moved for summary judgment based upon the undisputed material facts, which the trial court granted. In its order granting Graham's motion for summary judgment, the trial court noted that Allstate had the legal right to request the medical evaluations, that the selected physicians were appropriately qualified in conducting evaluations, and that the evaluations were reasonable as to time, date, place and notice. The order recites that if Graham's failure to attend the evaluations was unreasonable, Allstate was justified in terminating her PIP benefits. The trial court found that, as a matter of law, Graham's actions were reasonable based on the advice of counsel. The trial court entered a final summary judgment in favor of Graham on the issue of liability and a subsequent final judgment awarding Graham specified amounts for unpaid medical expenses and lost wages, as well as attorney's fees and costs.
Section 627.736(7), Florida Statutes (1985), as did Graham's insurance policy, clearly provided for physical examination by a physician if Graham was claiming PIP benefits under her policy. Section 627.736(7)(b) states in part: "[I]f a person unreasonably refuses to submit to an examination, the personal injury protection carrier is no longer liable for subsequent personal injury protection benefits."
The trial court erred in ruling the refusal of Graham to submit to an IME was reasonable based upon the advice of her attorney. As this court stated in Tindall v. Allstate Ins. Co., 472 So.2d 1291 (Fla. 2d DCA 1985), review denied, 484 So.2d 10 (1986):
Section 627.736(7)(a), Florida Statutes, expressly requires an injured person claiming PIP benefits to accede to an insurer's request that an independent physical examination be undertaken if the insured's mental or physical condition is "material to any claim." Allstate reasonably requested Tindall's cooperation in the examinations; Tindall refused. Although Tindall's expressed reason for his refusal was his uncertainty that Allstate would ultimately pay him the benefits to which he thought he was entitled, the validity of his concern finds no support in the pertinent statute. In fact, the unmistakable intent behind the independent medical examination requirement is to provide the insurance company with an opportunity to evaluate whether the benefits should be paid. Thus, an unreasonable refusal of a claimant to submit to an examination alleviates the insurer of any further liability for PIP benefits. § 627.736(7)(b), Fla. Stat.
In the face of that statutory requirement, Tindall offered nothing that would generate even the slightest fact question associated with his refusal to submit to the examinations; Allstate's request was patently not unreasonable.
Tindall, 472 So.2d at 1293.
We find that this record presents no disputed issues of fact or law which would permit the trial judge or jury to consider further evidence in this case. Accordingly, we reverse and remand this matter to the trial court to enter a judgment in favor of Allstate.
Reversed and remanded with directions.
DANAHY, A.C.J., and FRANK, J., concur.